IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

RAYMOND C. TURNER,

    Plaintiff,

v.                                                    No. 04-2035-B/V

CITY OF MEMPHIS, et al.,

    Defendants.

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Before the Court is the motion of the Defendant, City of Memphis ("City" or "Defendant"),

for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff

Raymond C. Turner, a black male, initiated this action pro se on January 21, 2004, alleging that the

Defendants[1] discriminated against him on the basis of his race, created a hostile working

environment, and retaliated against him in violation of Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e, et seq., as amended.  The Plaintiff has responded[2] to Defendant's

motion which is now appropriate for disposition.

---

[1] In addition to suing his employer, Turner also seeks relief from his supervisors, Joel
Neel and Mark Watts.

[2] In an order entered on March 18, 2005, the Court directed Plaintiff to show cause why
the Defendant's motion for summary judgment should not be granted based on his failure to file
a response.  As a result, Turner filed a motion to continue the joint proposed scheduling order on
March 24.  The Court denied the motion but noted that it would be considered as a response to
the Court's order as Plaintiff was requesting that the Court continue to proceed to trial instead of
dismissing his case.

1

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on  5-6-05

(35)

FACTS

Turner was hired by the City's Public Works and Sanitation Division as a driver at the Bellevue facility and was later promoted to the position of maintenance mechanic at the Cart Central facility in 1994. (Mem. Supp. City of Memphis Mot. Summ. J. ("Def.'s Mem.") at 2 & Exhibit A: Deposition of Raymond C. Turner Volume I at 24-27 (hereinafter "Turner dep. I at ____.").) Joel Neel, a white male, hired Plaintiff for the position which Turner still presently holds. (Def.'s Mem. at 2.) Plaintiff is a member of the American Federation of State, County, and Municipal Employees Union which accepts grievances filed by employees of the City pursuant to a Memorandum of Understanding ("M.O.U."). (Def.'s Mem. at 2-3.) Turner has submitted many grievances since his employment began. Based on these various complaints, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on February 5, 2003 which ultimately lead to this Title VII lawsuit.

Because Turner filed his charge of discrimination more than 300 days after several of the events on which he has based his grievances, the Defendant argues that only those filed within 300 days of the date he presented his charge should be considered. (Def.'s Mem. at 16.) An aggrieved person employed by a State or local agency must file a charge of discrimination "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). The Sixth Circuit has held "that Title VII's 300 day filing deadline essentially functions as a statute of limitations." Boykin v. Michigan Dep't of Corrections, No. 99-1345, 2000 WL 491512, **2 (6th Cir. April 18, 2000) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398, 102 S.Ct. 1127, 1135, 71 L.Ed.2d 234 (1982) (holding that timely filing with the EEOC is not a jurisdictional prerequisite, but rather operates like a statute of limitations)). Therefore, only events occurring after

2

April 11, 2002 will be considered by the Court as being within the Title VII time period of 300 days from February 5, 2003. See id.

Regretfully, Turner's complaint does not specify the conduct or the dates on which instances of discrimination occurred. In the form complaint, Plaintiff's statement of facts are as follows: "Harassed, Retaliation Reprisal, Intimidation, Suspended, Deflamation [sic] of character, called a nigger. Punitive damages emotional pain and suffering, inconvenience mental anguish, loss of enjoyment of life and other." (Compl. Under Title VII Civil Rights Act 1964 ¶ 10 ("Compl.").) When he was deposed, Plaintiff outlined many grievances which he has filed regarding the Defendant's employment practices. However, many of them were presented before February 2002 and numerous others after that date were not based on adverse employment decisions.

Not every employment action opposed by an employee is sufficient to satisfy the adverse action requirement in order to prove a retaliation claim. Rather, the adverse action must be a *materially* adverse change in the terms or conditions of plaintiff's employment. Bowman v. Shawnee State Univ., 220 F.3d 456, 461-62 (6th Cir. 2000). Thus, in order to be actionable, the adverse action must be sufficiently severe. See Halloran v. Minnesota Old Northeast Agents Ltd. Partnership, 58 F. Supp. 2d 831, 841 (W.D. Tenn. 1999). Courts in this Circuit have found that a reprimand or an involuntary transfer, absent loss of pay or benefits, or change in duties, does not constitute a material change in employment. See Akers v. Alvey, 338 F.3d 491, 498 (6th Cir. 2003); Reid v. Madison County, Tenn., No. 98-5312, 1999 WL 196560, at **2 (6th Cir. Apr. 1, 1999); Halloran, 58 F. Supp. 2d at 841. The Court will highlight the Plaintiff's allegations which could potentially be considered adverse employment decisions taken due to his race.

3

Plaintiff testified that on September 11, 2002 Mark Watts, a white foreman for the Defendant, asked Turner to help a white employee complete his job duties, which Plaintiff claims was due to the employee's sleeping on the job. (Turner dep. I at 34.) Turner stated that white employees were not disciplined for sleeping on the job or for returning late from breaks while black employees were. (Turner dep. I at 36-37, 40.) Additionally, when Plaintiff questioned Watts about the assignment, Watts allegedly stated "you people . . . need to start doing what we tell you all to do." (Turner dep. I at 34.) According to Turner, when he attempted to talk to his supervisor, Joel Neel, about the incident, he allegedly told Plaintiff to get out of his face and said that "you people need to start doing what you're told." (Turner dep. I at 34.) As a result of the incident, Plaintiff filed a grievance on the same day.

Several days later, Plaintiff was suspended for five days after a fact-finding hearing determined that he had falsified paperwork regarding a job assignment. (Turner dep. I at 63.) In his deposition, Turner averred that he was suspended as retaliation for filing the September 11, 2002 grievance and that someone else had changed the information. (Turner dep. I at 63-64.)

Turner also complained that he was wrongfully suspended in April 2003 after a discussion with Neel in which the supervisor called him a "smart ass nigger" in front of another black coworker. (Def.'s Mem. at 13 & Exhibit D: Deposition of Raymond C. Turner Volume II at 146-51 (hereinafter "Turner dep. II at ___.").) Plaintiff concedes that, after Neel made that comment, he told him to "get your ass out of my face," ignored Neel's request that he come talk to him, and left work for the day even though his shift had not yet ended. (Turner dep. II at 149.) As a result of Plaintiff's leaving the work site, he was suspended for several days. (Turner dep. II at 150.) A fact-finding hearing was held in which Neel denied making the comment. (Turner dep. II at 150-51.)

4

Additionally, according to Plaintiff, his coworker did not testify at the hearing because he did not want to get involved. (Turner dep. II at 150-51.) Consequently, Plaintiff's grievance was denied. (Def.'s Mem. at 12.)

On August 15, 2003, Plaintiff filed another grievance claiming that he had been demoted by being assigned to the warehouse in retaliation for filing several grievances against Watts and Neel. (Turner dep. II at 156.) Area manager, Joyce Flynn, heard the grievance and found in favor of Turner. (Turner dep. II at 156.) However, Plaintiff conceded that his pay and benefits always remained the same during the entire time he was assigned to the warehouse and that after his grievance was granted, he resumed going out into the field. (Turner dep. II at 157.)

In August 2004, Turner was suspended for ten days because he damaged two City vehicles. Plaintiff testified that his suspension was discriminatory and that other employees, including both black and white employees, had damaged other vehicles much worse but were never disciplined. (Turner dep. I at 79-80.) Then, in December, Plaintiff was again suspended for five days for being out of his work area. (Def.'s Mem. at 14.) However, Turner admits that he was not only outside his work area but also outside of the State of Tennessee. (Turner dep. I at 87; Turner dep. II at 179.)

## STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in

the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith</u>
<u>Radio Corp.</u>, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When the motion
is supported by documentary proof such as depositions and affidavits, the nonmoving party may
not rest on his pleadings but, rather, must present some "specific facts showing that there is a
genuine issue for trial." <u>Celotex</u>, 477 U.S. at 324, 106 S.Ct. at 2553. It is not sufficient "simply
[to] show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus.</u>
<u>Co.</u>, 475 U.S. at 586, 106 S.Ct. at 1356. These facts must be more than a scintilla of evidence
and must meet the standard of whether a reasonable juror could find by a preponderance of the
evidence that the nonmoving party is entitled to a verdict. <u>Anderson v. Liberty Lobby, Inc</u>, 477
U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Summary judgment must be
entered "against a party who fails to make a showing sufficient to establish the existence of an
element essential to that party's case, and on which that party will bear the burden of proof at
trial." <u>Celotex</u>, 477 U.S. at 322, 106 S.Ct. at 2552. In this circuit, "this requires the nonmoving
party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." <u>Lord v.</u>
<u>Saratoga Capital, Inc.</u>, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing <u>Street v. J.C. Bradford &</u>
<u>Co.</u>, 886 F.2d 1472, 1478 (6th Cir. 1989)). The "judge may not make credibility determinations
or weigh the evidence." <u>Adams v. Metiva</u>, 31 F.3d 375, 379 (6th Cir. 1994).

<u>ANALYSIS OF PLAINTIFF'S TITLE VII CLAIMS</u>

In order to establish a claim under Title VII, a plaintiff must offer either direct or
circumstantial evidence of discrimination that would permit an inference of discriminatory treatment.
<u>Farmer v. Cleveland Pub. Power</u>, 295 F.3d 593, 603 (6th Cir. 2002). If direct evidence of
discrimination is not available, then the burden-shifting approach set forth in <u>McDonnell Douglas</u>

Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) applies. Farmer, 295 F.3d at 603. To establish direct proof of discriminatory intent, one must present evidence proving the "existence of a fact without any inferences or presumptions, if believed." See, e.g., Brack v. Shoney's, Inc., 249 F. Supp. 2d 938, 947 (W.D. Tenn. 2003) (citations omitted). Here, the Plaintiff has not indicated whether he is presenting a direct or indirect case of discrimination. The only allegation which could be considered direct proof of discrimination would be Turner's contention that he was called a "nigger" by his supervisor. (See Turner dep. II at 146-51.) However, "[w]hile a continuing use of racial or ethnic slurs would violate Title VII, occasional or sporadic instances of such conduct does not." Torres v. County of Oakland, 758 F.2d 147, 152 (6th Cir. 1985) (citations omitted); see also Jones v. Continental Cuisine, Inc., 353 F. Supp. 2d 716, 721 (E.D. La. 2004) (holding "that even if [defendant] used the term 'n word,' it was a stray remark that does not furnish direct proof of discriminatory intent"). In this case, the Plaintiff has only alleged that the racial epithet was used on one occasion and has not supported that claim with any corroborating evidence. Cf. Holmes v. FSR/Tennessee Affordable Housing Foundation, 100 F. Supp. 2d 804, 807 (W.D. Tenn. 2000) (Judge Jon McCalla noting that "evidence of the decision-makers' repeated use of the terms 'nigger' and 'stupid nigger' constituted direct evidence precluding summary judgment"). Thus, Turner's discrimination claims must be analyzed under the McDonnell Douglas burden-shifting approach.

Under the McDonnell Douglas framework, the plaintiff must first present a prima facie case of discrimination, which would create a rebuttable presumption of discrimination. Vaughn v. Watkins Motor Lines, Inc., 291 F.3d 900, 906 (6th Cir. 2002). If the plaintiff meets this requirement,

7

the defendant is then required to "articulate some legitimate, nondiscriminatory reason" for engaging in the challenged conduct. Id. (citation omitted). If the defendant satisfies its burden, the plaintiff must then "prove that the proffered reason was actually a pretext to hide unlawful discrimination." Id. (citation omitted).

In order to establish a prima facie case of discrimination, the plaintiff must demonstrate that he was (1) a member of a protected class, (2) qualified for his position, (3) suffered an adverse employment action, and (4) was replaced by one who was not a member of his protected class. Id. If the defendant is able to rebut the prima facie case by offering legitimate, nondiscriminatory reasons for its challenged action, the burden shifts back to the plaintiff to show that the defendant's stated reasons were pretextual. Vaughn, 291 F.3d at 906. To establish that the proffered reasons were pretextual, the plaintiff must show by a preponderance of the evidence that the reasons either (1) have no basis in fact, (2) did not actually motivate the adverse employment decision, or (3) are insufficient reasons to motivate the decision. See Whitaker v. Wallace, 170 F.3d 541, 544 (6th Cir. 1999) (citations omitted). The ultimate burden of persuasion remains at all times with the plaintiff. Burdine, 450 U.S. at 253, 101 S.Ct. at 1093.

A. Race Discrimination

Viewing Plaintiff's complaint and deposition testimony in a light most favorable to him, the Court finds that he has presented a prima facie case of discrimination based on race. Turner, as a black male, was a member of a protected class and likely qualified for the job which he had been performing for over ten years. See Vaughn, 291 F.3d at 906. Although the Defendant claims that Plaintiff did not suffer an adverse employment decision, he was suspended on separate occasions for three days or more. The Sixth Circuit has held that a suspension for the equivalent of three eight-

8

hour work days was an adverse employment action within the meaning of Title VII. Smith v. City of Salem, Ohio, 378 F.3d 566, 756-76 (6th Cir. 2004). However, Plaintiff contends that several of the actions about which he complains were the result of retaliation. Consequently, those reprisals will be more appropriately addressed under the retaliation analysis set forth below.

During April 2003, Turner filed a series of grievances claiming that he was wrongfully suspended after he "walked off the job" when Neel allegedly called him a "smart ass nigger." (Turner dep. II at 146-51.) Plaintiff also testified that he was discriminated against by being suspended for ten days after he damaged two City vehicles. (Turner dep. I at 79-80.) Finally, in December 2004, Plaintiff was suspended for five days for being out of his work area. (Turner dep. II at 176, 179.) Thus, the Court concludes that Plaintiff has suffered adverse employment decisions.

Because a prima facie case has been presented, the McDonnell Douglas framework requires Defendant to provide a nondiscriminatory reason for its decisions. As Plaintiff concedes, the City suspended him for leaving work during the middle of his shift without approval from his supervisor. (Turner dep. II at 149.) Likewise, Turner stated that he did in fact damage two of the City's vehicles when the accelerator became stuck and offered to pay for the losses. (See Turner dep. I at 79.) With respect to his suspension for being outside of his work area, Plaintiff readily admitted that he was absent from his employment. (Turner dep. II at 176, 179.)

Consequently, because the City has offered nondiscriminatory reasons for the suspensions, Turner is then required to demonstrate that the proffered bases are pretextual. See Vaughn, 291 F.3d at 906. Additionally, as Neel was the person who hired the Plaintiff (see Declaration of Joel E. Neel at 1) as well as the supervisor who suspended him on two of the occasions mentioned above, Turner must overcome the inference that Neel's decisions were not motivated by race. See Buhrmaster v.

<u>Overnite Trasp. Co.</u>, 61 F.3d 461, 463 (6th Cir. 1995) ("[w]hen the individual who hires a person is the same person who fires an employee, there is a strong inference that discrimination did not motivate the employment decision"); <u>see also</u> <u>Wexler v. White's Fine Furniture, Inc.</u>, 317 F.3d 564, 590 (6th Cir. 2003) (stating that the "same-actor" inference supports "the conclusion that a person who hired an age-protected employee, but who later demotes or discharges that same employee, probably was not motivated by ageist bias").

In his response to the Defendant's motion, Turner has presented no evidence that the City's stated reasons for suspending him had no basis in fact, did not motivate the decision, or were insufficient to impel the decision. <u>See</u> <u>Whitaker</u>, 170 F.3d at 544 (citations omitted). In his deposition, Plaintiff concurred with the factual bases which led to the various suspensions. Accordingly, the Court finds that Plaintiff has not shown that Defendant's reasons for suspending him were pretextual. As such, Turner has failed to establish that a genuine issue of material fact exists on the question of his claim of discrimination. <u>See</u> Fed. R. Civ. P. 56(c).

*B. Hostile Work Environment*

In order to prevail on a claim of hostile work environment, a plaintiff "must establish that (1) [he] was a member of a protected group, (2) [he] was subjected to unwelcome harassment, (3) the harassment was based upon the employee's protected status, such as race or gender, (4) the harassment affected a term, condition, or privilege of employment, and (5) the defendant knew or should have known about the harassing conduct but failed to take any corrective or preventive actions." <u>Farmer</u>, 295 F.3d at 604 (citation omitted). Further, a racially hostile work environment claim is "cognizable only if the purported harassment, viewed in conjunction with all the circumstances, occurred because of the employee's race." <u>Id.</u> at 605 (citations omitted). "Actionable

10

harassment exists if 'the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. . . ." Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).  The Supreme Court applies a totality of the circumstances approach to determine whether a hostile work environment claim is actionable considering: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787-88, 141 L.Ed.2d 662, 118 S.Ct. 2275 (1998). However, "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Id. (internal citations omitted).

Because Turner's deposition is the only evidence submitted to the Court outside of the pro se complaint, the Court will refer to Plaintiff's testimony in determining whether he has set forth a claim of hostile work environment.  As stated above, Turner asserted in his deposition that Mark Watts and Nell told him "you people need to start doing what you're told." (Turner dep. I at 34, 36-37.) Additionally, as explained above, Plaintiff claims that Neel once called him a disparaging name and wrongfully suspended him on several occasions.  (Turner dep. I at 79-80, 87.)  Even accepting these allegations as true, the Court finds that such conduct is simply not pervasive or severe enough to state a cause of action for hostile work environment based on race. See Farmer, 295 F.3d at 605. Isolated offensive utterances are not sufficiently severe to alter the terms and conditions of employment. See Faragher, 524 U.S. at 787-88, 118 S.Ct. at 2283-84.  Moreover, Turner has not presented any evidence to this Court that the Defendant's conduct was physically threatening. See

11

*Faragher*, 524 U.S. at 787-88, 118 S.Ct. at 2283-84.  Furthermore, Plaintiff has not established that his suspensions were due to his race.  See *Farmer*, 295 F.3d at 604.

Even assuming that the conduct about which Plaintiff complains could constitute a hostile working environment, he has not shown that the Defendant did not investigate his grievances or take corrective action when necessary.  See *Farmer*, 295 F.3d at 604.  Indeed, in his deposition, Turner referred to the M.O.U., which allowed him to file grievances against his supervisors, and verified that his allegations were considered at fact-finding hearings.  (See Turner dep. II at 146, 150; Turner dep. I at 79.)  Therefore, since nothing in the Plaintiff's deposition, complaint, or response to the Defendant's motion could be considered to allege, must less establish, that the Defendant's failed to take any preventative action, the Court finds that Turner has failed to state a claim for hostile work environment.  See *Farmer*, 295 F.3d at 604 (citation omitted).

*C. Retaliation*

In order to prevail on a claim of retaliation, a plaintiff must demonstrate that (1) he was engaged in activity protected by Title VII; (2) his actions were known to the defendant; (3) subsequently, the employer took action adverse to the plaintiff; and (4) there was a causal connection between the plaintiff's activity and the actions of the defendant.  *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).  When Plaintiff filed his grievances claiming that he was suspended based on his race, he was engaging in protected activity under Title VII.  See *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000) (opposing a practice by an employer which could be unlawful under Title VII is "protected activity").  Additionally, the Defendant knew about the actions based on Plaintiff's filings.

12

Turner complains about several adverse employment actions that were taken against him including:  that he was suspended for five days for allegedly falsifying paperwork after he filed a grievance less than a week before, and that he was demoted by being assigned to the warehouse after he filed several grievances against Neel and Watts.  As previously noted, an employer's adverse determination, to be actionable, must materially alter the terms or conditions of plaintiff's employment.  Bowman v. Shawnee State Univ., 220 F.3d 456, 461-62 (6th Cir. 2000).

> A materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

Bowman, 220 F.3d at 461-62.  De minimis actions are not materially adverse and are not actionable. Id. at 462.  In Kocsis v. Multi-Care Management, Inc., 97 F.3d 876 (6th Cir. 1996), the Sixth Circuit, in discussing this issue, noted that reassignment, negative public perception concerning a transfer or a particular job, a transfer to a position with different responsibilities, semantic changes in title, and the bruising of an ego did not, without more, rise to the level of "materially adverse changes" in the terms of employment.  Kocsis, 97 F.3d at 885-87.   Courts in this Circuit have also found that a reprimand or an involuntary transfer, absent loss of pay or benefits, or change in duties, does not constitute a materially adverse change in employment.  See Akers v. Alvey, 338 F.3d 491, 498 (6th Cir. 2003); Reid v. Madison County, Tenn., No. 98-5312, 1999 WL 196560, at *2 (6th Cir. Apr. 1, 1999); Halloran, 58 F. Supp. 2d at 841.   "An employee's subjective impressions as to the desirability of one position over another are not relevant."  Policastro v. Northwest Airlines, 297 F.3d 535, 539 (6th Cir. 2002), reh'g and suggestion for reh'g en banc denied (Oct. 2, 2002). Similarly, "an employee's subjective view about an employment action, without further evidentiary

13

support, may not by itself establish that the decision was pretextual." <u>Kinamore v. EPB Elec. Utility</u>, No. 1:00-CV-416, 2002 WL 32059025, at *6 (E.D. Tenn. Apr. 11, 2002), <u>aff'd</u>, No. 02-5631, 2004 WL 253367 (6th Cir. Feb. 9, 2004).

The Court finds that Plaintiff's suspension was an adverse employment decision resulting in a loss of salary. <u>See</u> <u>Smith</u>, 378 F.3d at 576 (finding the equivalent of a three-day suspension an adverse employment decision under Title VII). However, with respect to Plaintiff's claim that he was demoted, the Court believes this assertion alone does not amount to an adverse employment decision. Turner admitted in his deposition that neither his pay nor benefits were affected. (Turner dep. II at 157.) The Sixth Circuit has held that a reassignment without a change in compensation or benefits is generally not an adverse employment action. <u>See</u> <u>Kocsis</u>, 97 F.3d at 885-87. Turner has not pointed to any circumstances which indicate that his job duties changed or that he was given a less distinguished title. <u>See</u> <u>Policastro</u>, 297 F.3d at 539 (stating that an employee's subjective impressions are not relevant).

Finally, to establish a prima facie case of retaliation, Plaintiff must show that the suspension was casually linked with the protected activity of filing a grievance. <u>See</u> <u>Nguyen</u>, 229 F.3d at 563. Turner's only evidence of a relationship between these events would be the close proximity in time between the grievance filed on September 11, 2002 and his suspension for falsifying his employment records less than a week later. (Turner dep. I at 62.) "In order to show a causal connection, Plaintiff must submit evidence from which an inference can be drawn that the adverse action would not have occurred but for [his] complaints of discrimination or harassment." <u>Cushman-Lagerstrom v. Citizens Ins. Co. of America</u>, No. 01-2690, 2003 WL 21774017, at **9-10 (6th Cir. July 30, 2003) (citing <u>Allen v. Mich. Dep't of Corr.</u>, 165 F.3d 405, 413 (6th Cir. 1999)). "Evidence . . . that the adverse

14

action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." DiCarlo v. Potter, 358 F.3d 408, 421 (6th Cir. 2001). However, close proximity alone generally is insufficient to establish the causal connection element of a retaliation claim. Nguyen v. City of Cleveland, 229 F.3d 559, 566 (6th Cir. 2000); see also Hall v. Eastman Chem. Co., No. 04-5228, 2005 WL 705775, at **3 (6th Cir. Mar. 28, 2005); Cushman-Lagerstrom, No. 01-2690, 2003 WL 21774017, at **9; Little v. B.P. Exploration & Oil Co., 265 F.3d 357, 364 (6th Cir. 2001). Nonetheless, "there may be circumstances where evidence of temporal proximity alone would be sufficient to support" the causal connection. See Nguyen, 229 F.3d at 566; see also DiCarlo, 358 F.3d at 421 (stating that "this Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise").

Here, the only evidence is Plaintiff's deposition testimony in which he declared that his suspension for falsifying his records was in actuality a form of retaliation by the Defendant, implying that someone else framed him by changing the records. (See Turner dep. I at 63-64.) However, Turner's conclusory allegations without more are not enough to create a genuine issue of fact as to whether his suspension was related to his filing a grievance a week before. Conclusory statements devoid of a factual basis do not create a genuine issue of material fact. Essence, Inc. v. City of Federal Heights, 285 F.3d 1272, 1289 (10th Cir. 2002), cert. denied, 537 U.S. 947, 123 S.Ct. 411, 154 L.Ed.2d 291 (2002); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993). Consequently, as Plaintiff has not presented any other evidence regarding this incident, the Court finds that he has failed to establish a prima facie case of retaliation. Thus, the Defendant's motion

for summary judgment is GRANTED as to Turner's claim for retaliation.

With respect to the individual Defendants Joel Neel and Mark Watts, the Plaintiff does not indicate whether he is suing them in their official or individual capacities. However, in either capacity, based on the Plaintiff's allegations, they cannot be held liable under Title VII. A suit against an employee in his official capacity is generally considered the equivalent of a suit against the entity itself. See Haltek v. Village of Park Forest, 864 F. Supp. 802, 804 (N.D. Ill. 1994) ("Suing an individual supervisory employee in his official capacity is the equivalent of suing the employer."). Further, a claim against a supervisor/employee in his individual capacity in not actionable under Title VII. Wathen v. Gen. Elec. Co., 115 F.3d 400, 406 (6th Cir. 1997) ("we find that the statute as a whole, the legislative history and the case law support the conclusion that Congress did not intend individual[ employees/supervisors] to face liability under the definition of 'employer' it selected for Title VII"); see also Little, 265 F.3d at 362. Accordingly, Plaintiff's claims against Neel and Watts in either capacity are DISMISSED.

CONCLUSION

For the reasons articulated herein, the Defendant's motion for summary judgment is GRANTED and Plaintiff's claims against the individual Defendant's are DISMISSED. Accordingly, this matter is DISMISSED and the Clerk of Court is directed to enter judgment in favor of the Defendants.

IT IS SO ORDERED this 5th day of May, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

16

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 35 in case 2:04-CV-02035 was distributed by fax, mail, or direct printing on May 6, 2005 to the parties listed.

---

Raymond C. Turner
674 Nth Willett
Memphis, TN 38107

Sara L. Hall
CITY ATTORNEYS OFFICE
125 N. Main Street
Rm. 314
Memphis, TN 38103

Robert D. Meyers
KIESEWETTER WISE KAPLAN & PRATHER, PLC
3725 Champion Hills Drive
Ste. 3000
Memphis, TN 38125

Honorable J. Breen
US DISTRICT COURT